UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In the matter of:

Intermet Corporation, et al,  Case No. 04-67597-MBM
 (Jointly Administered)
 Debtors.  /  Chapter 11
Ganton Technologies, LLC  Hon. Marci B. McIvor
(f/k/a Ganton Technologies, Inc.)

 Plaintiff,

vs.  Adv. No. 06-4905

Chemtool, Inc.,

 Defendant.  /

## OPINION GRANTING JUDGMENT TO PLAINTIFF

This matter comes before the Court on plaintiff/debtor Ganton Technologies, LLC's Adversary Complaint. The Complaint seeks to recover alleged preferential payments made to defendant Chemtool, Inc. prior to the filing of Plaintiff's bankruptcy petition. A trial was held on July 16, 2007. For the reasons set forth in this Opinion, the Court finds that Plaintiff is entitled to judgment in the amount of $59,370.15, plus interest from the date of filing the Complaint.

<u>Statement of Facts</u>

Plaintiff/debtor Ganton Technologies, LLC is an automotive supplier. On September 29, 2004, Plaintiff (along with numerous related entities) filed a voluntary chapter 11 bankruptcy petition.[1] On September 29, 2005, the Court entered an Order

---

[1] Plaintiff's bankruptcy case is jointly administered with *In re Intermet Corporation, Inc.*, case no. 04-67597 (E.D. Mich.).

confirming Debtors' Amended Plans of Reorganization.  Under § 6.14 of the Plans and Bankruptcy Code § 1123, Plaintiff retained the right to enforce all retained actions including avoidance actions that existed on or before the effective date of the Plan. Pursuant to that provision of the Plan, Plaintiff/debtor brought the present adversary action against defendant Chemtool, Inc., a supplier of lubricants and chemicals. Plaintiff seeks recovery of alleged preferential payments under 11 U.S.C. § 547 of the Bankruptcy Code.  Defendant contends that the payments received from Plaintiff within 90 days of the filing of the petition were either a contemporaneous exchange for new value given to Debtor, or alternatively, payments for debt incurred by Debtor in the ordinary course of its business relationship with Defendant.

In the Final Pre-trial Order, the parties stipulated that between July 1, 2004 and September 29, 2004 (the 90 days preceding the filing of Plaintiff's bankruptcy petition), Plaintiff/debtor made the following transfers and/or payments totaling $ 59,370.15 to or for the benefit of the Defendant:

| **Check No.** | **Date Cleared** | **Invoice Date** | **Invoice No.** | **Amount** |
| --- | --- | --- | --- | --- |
| 38155 | July 8, 2004 | April 29, 2004<br>April 30, 2004<br>May 13, 2004 | 614026<br>614669<br>616501 | $ 7,511.80 |
| 38365 | July 14, 2004 | May 17, 2004<br>May 24, 2004 | 617139<br>618441 | $ 7,039.40 |
| 38506 | July 22, 2004 | May 26, 2004<br>May 27, 2004<br>May 27, 2004<br>May 27.2004 | 618757<br>619150<br>619149<br>619148 | $ 9,498.10 |
| 38664 | July 27, 2004 | June 4, 2004 | 620453 | $ 2,873.00 |
| 38979 | August 10, 2004 | June 16, 2004 | 622586 | $ 2,255.00 |

| Check No. | Date Cleared | Invoice Date | Invoice No. | Amount |
|---|---|---|---|---|
| 39134 | August 17, 2004 | June 22, 2004<br>June 22, 2004 | 623472<br>623473 | $ 7,372.50 |
| 39272 | August 24, 2004 | June 24, 2004<br>June 25, 2004<br>June 29, 2004 | 624088<br>624362<br>624860 | $ 3,781.25 |
| 39431 | August 31, 2004 | July 7, 2004<br>July 12, 2004<br>July 7, 2004 | 626080<br>626637<br>626027 | $ 18,868.10 |
| 39594 | September 9, 2004 | July 19, 2004 | 628062 | $ 171.00 |

(Joint Final Pre-trial Order stipulations, ¶ 6). The parties further stipulated that at the time of each of the transfers, Defendant was Plaintiff's creditor and that Defendant was the initial transferee of the transfers. (Joint Final Pre-trial Order stipulations ¶¶ 7,8). The parties also agree that "[a]t the time of the transfers, as provided in 11 U.S.C. § 547(f) the Debtor is presumed to have been [ ] insolvent as that term is defined in 11 U.S.C. § 101(32) on and during the 90 days immediately preceding September 29, 2004 (the date of the petition). (Joint Final Pre-Trial Agreement stipulations ¶ 9).

Plaintiff's sole witness at trial was Alan Miller, vice-president and secretary of Ganton Technologies during the period relevant to this case. (Trial Transcript at 18, hereinafter "Trial Tr. at __"). Mr. Miller testified regarding the terms of Plaintiff's confirmed plan and indicated that depending on the nature of the unsecured debt, the plan provided unsecured creditors a dividend between 3 and 16 percent. (Trial Tr. at 19). He also testified that unsecured creditors would be paid nothing in the event of Plaintiff's liquidation. (Trial Tr. at 21).

3

Defendant's primary witness was David Klesmith, its Chief Financial Officer. (Trial Tr. at 22). He testified that Defendant's business relationship with Plaintiff began in the late 1990s. (Trial Tr. at 26). In a typical transaction, Plaintiff would contact Defendant to place an order. Defendant's employees would fill the order, arrange for shipment of goods and schedule delivery. After an order was shipped, an invoice would be mailed to the customer. (Trial Tr. at 31). The invoices generated by Defendant provided for net 30 or net 45 day payment terms. (Trial Tr. at 27). Plaintiff paid the invoices within 30 to 45 days. (Trial Tr. at 27-28).

In 2004, Plaintiff's account was placed on a "credit hold" status. Credit hold status prevented Defendant's employees from generating a bill of lading as to goods requested by Plaintiff. Orders received from Plaintiff were sent to the accounts receivable department where arrangements regarding payments on outstanding obligations could be negotiated before additional goods were shipped. (Trial Tr. at 28-29, 30-32). Plaintiff's account was placed on credit hold because payments on the account were "becoming a little later than they had in the past". (Trial Tr. at 29). Defendant attempted to cap Plaintiff's outstanding balance at $50,000 by requiring payments on old invoices before shipping new goods. (Trial Tr. at 27). As payments were received from Plaintiff, the funds were applied to the Plaintiff's oldest outstanding debt. (Trial Tr. at 40-42).

At the close of proofs, the Court took the matter under advisement.

## Jurisdiction

The Court has subject matter jurisdiction over this proceeding pursuant to 28

U.S.C. § 1331 and § 1334(b) and (e). This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (F), and (O).

Statement of Law

A. Elements of a Preferential Transfer under 11 U.S.C. § 547(b)

Pursuant to 11 U.S.C. § 547(b), the Debtor or a Trustee may avoid payments made ninety (90) days prior to filing bankruptcy if the following conditions are met:

> Except as provided in subsections (c) and (i) of this section, the trustee may avoid any transfer of an interest of the debtor in property -
>
> (1) to or for the benefit of a creditor;
>
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
>
> (3) made while the debtor was insolvent;
>
> (4) made -
>
>     (A) on or within 90 days before the date of the filing of the petition; or
>     (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
>
> (5) that enables such creditor to receive more than such creditor would receive if-
>
>     (A) the case were a case under chapter 7 of this title;
>     (B) the transfer had not been made; and
>     (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).

Pursuant to 11 U.S.C. § 547(g):

> ... the trustee has the burden of proving the avoidability of a transfer under subsection (b) of this section, and the creditor or party in interest against whom recovery or avoidance is sought has the burden of proving the nonavoidability of a transfer under subsection (c) of this section.

In the Final Joint Pretrial Order, the parties stipulated that three of the five requirements for preferential payments were met: the payments were made to or for the benefit of a creditor (§ 547(b)(1)), while the Plaintiff was insolvent (§ 547(b)(3)), and within ninety (90) days of the filing of the petition (§ 547(b)(4)). At trial, Defendant asserted that Plaintiff could not establish the remaining two requirements: that the payments were on account of an antecedent debt (§ 547(b)(2)), and that the transfers enabled the Defendant to recover more than it would have received if the Debtor's case had been filed under Chapter 7 of the Bankruptcy Code and the payments had not been made (§ 547(b)(5)).

At trial, Plaintiff's witness, Alan Miller, testified that Debtor's confirmed plan of reorganization distributed a dividend of between 3 and 16 percent to unsecured creditors, depending on the nature of the unsecured debt. Mr. Miller further testified that had Debtor liquidated its assets, no distribution would have been available to unsecured creditors. The payments made by Plaintiff to Defendant during the ninety (90) days prior to bankruptcy paid 100 percent of invoices submitted by Defendant to Plaintiff. Since Defendant is an unsecured creditor and received 100 percent payment on its outstanding invoices, Defendant clearly received more than Defendant would have received if the case had been filed under Chapter 7 and the payments had not

6

been made. Plaintiff has therefore satisfied the requirements of § 547(b)(5).

With respect to § 547(b)(4), Defendant argued that the payments received from Plaintiff were not on account of an antecedent debt. While the Bankruptcy Code does not define the term "antecedent debt", a debt is "antecedent" if it is incurred before the transfer; the debt must have preceded the transfer.[2] "[A]n antecedent debt exists when 'the liability for payment' precedes the transfer." *In re Enron Corp.*, 357 B.R. 32, 47 (Bankr. S.D.N.Y. 2006). As a general rule, payments by check for goods previously invoiced is payment on account of an antecedent debt. *See Roberds, Inc. v. Broyhill Furniture (In re Roberds, Inc.),* 315 B.R. 443 (Bankr. S.D. Ohio 2004); *Ledford v. Fort Hamilton Hughes Memorial Hospital Center (In re Mobley),* 15 B.R. 573 (Bankr. S.D. Ohio 1981) (pre-payment for hospital service is not for or on account of an antecedent debt.); *Van Huffel Tube Corp. V. A & G Industry (In re Van Huffel Tube Corp.)*, 74 B.R. 579 (Bankr. N.D. Ohio 1987)(payments made to creditor applied to oldest invoices and were made on account of antecedent debt).

The stipulation of facts and the testimony of David Klesmith, Chief Financial Officer for Defendant, directly contradict Defendant's contention that the payments received were not on account of antecedent debt. The stipulation of facts indicates that

---

[2]The term "debt" is defined in section 101(12) of the Code, which states that "debt means liability on a claim." "Claim" is defined at section 101(5)(A) a "a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." As explained by the Court in *In re Enron, Corp.*, 357 B.R. 32 (Bankr. S.D.N.Y. 2006), the terms "claim" and "debt" "are synonymous, such that whenever a 'claim' arises, a 'debt' necessarily arises as well, the only distinction between the two terms is the party to which it applies." *Enron*, 357 B.R. at 48, citations omitted.

7

liability for payment (by way of invoices) routinely arose 30 to 60 days prior to receipt of payment. Specifically, shipments invoiced on April 29, 2004, April 30, 2004 and May 13, 2004, were paid more than 30 days later, on July 8, 2004, with check number 38155. The subsequent invoices at issue (dated May 17 through July 19, 2004) , were similarly paid by check received 49 to 68 days after the date of the invoice. Mr. Klesmith testified at trial that as payments were received, the funds were applied to the oldest outstanding invoices.

Based on the invoices, checks, and testimony of Mr. Klesmith, the Court finds that payments made by Plaintiff to Defendant between July 8, 2004 and September 9, 2004 were paid on account of antecedent debts. Regardless of the date on the check, payments were applied to the oldest outstanding invoices–invoices which establish the existence of debts which pre-existed the payments.

B.  Defenses to a Preferential Transfer: 11 U.S.C. § 547(c)

Notwithstanding the fact that Debtor has established all of the elements of a preferential transfer under §547(b), the transfers may not be avoided if a creditor proves one of the defenses under 11 U.S.C. § 547(c). In the instant case, the Creditor asserts defenses under 11 U.S.C. § 547(c)(1), the contemporaneous exchange for new value defense, and § 547(c)(2), the ordinary course of business defense.

   1. Contemporaneous Exchange for New Value Under § 547(c)(1)

11 U.S.C. § 547(c)(1) states:

> The trustee may not avoid under this section a transfer -
>
>> (1) to the extent that such transfer was -

8

> > (A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and
>
> > (B) in fact a substantially contemporaneous exchange.

The purpose of the contemporaneous exchange for new value defense is to encourage creditors to continue to deal with financially distressed debtors as long as their transactions involve true exchanges of equally valued consideration. *Payless Cashways, Inc. v. Canfor Wood Products Marketing (In re Payless Cashaways, Inc.)*, 306 B.R. 243 (8th Cir. BAP, 2004); *Jones Truck Lines, Inc. v. Central States Pension Fund (In re Jones Truck Lines, Inc.)*, 130 F.3d 323 (8th Cir. 1997). To prevail on this defense a creditor must prove by a preponderance of the evidence: (1) that debtor and creditor intended that payment of money and delivery of goods to be a contemporaneous exchange, (2) that the exchange must, in fact, be substantially contemporaneous, and (3) the exchange is for new value. "In simplest terms, a defendant makes its case under this provision by proving that the debtor received new value in exchange for the payment in question and that both debtor and creditor intended such an exchange." *Nation-Wide Exchange Services, Inc. v. Miller & Holmes, Inc. (In re Nation-Wide Exchange Services, Inc.),* 291 B.R. 131, 149 (Bankr. D. Minn. 2003). In determining the parties' intent, the Court may consider the parties' testimony, agreements, and course of dealing. *Tyler v. Swiss American Securities, Inc. (In re Lewellyn & Co., Inc.),* 929 F.2d 424, 428 (8th Cir. 1991).

In the present case, Defendant failed to prove any element of the

contemporaneous exchange for new value defense.  David Klesmith testified that throughout Defendant's business relationship with Plaintiff, Plaintiff generally paid invoices within 30 to 45 days.  At some point, it became clear to Defendant that Plaintiff was having financial difficulties, and payments on invoices stretched beyond 45 days.  In response to the slower payments, Plaintiff's account was placed in a "credit hold" status, in order to prevent goods being shipped before old invoices were paid.  Mr. Klesmith's testimony indicated that Defendant intended to minimize its credit risk as to Plaintiff by, in effect, capping Plaintiff's credit at $50,000 and making it clear that no goods would be shipped without payment on old invoices.

The Court infers from this testimony that it was the parties' intention that, as long as Plaintiff continued to make payments on old invoices, Defendant would continue to ship goods.  The testimony is corroborated by the stipulated facts, which indicate that on July 8, 2004, a check in the amount of $7,511.80 posted to Defendant's account and was applied to invoiced dated April 29, April 30, and May 13, 2004. The stipulated facts show that all of the other preferential payments made by Plaintiff to Defendant were applied to the oldest outstanding invoices.  There was no evidence presented to support the contention that payments received by Defendant were intended to pay  (or prepay) shipments being withheld by Defendant.

In addition to the lack of evidence regarding the parties intent to create a contemporaneous transaction, Defendant also failed to show that the payments at issue were made in exchange for new value.  The stipulated facts clearly show that each check sent by Plaintiff during the preference period was made in payment of a

shipment of goods sent 45-60 days prior to the payment. The payment made on July 8, 2004 paid for goods shipped and invoiced on April 29, 2004 and May 13, 2004, not for goods shipped and invoiced in July, 2004. July, 2004 invoices were paid by check issued in September, 2004.

Because Defendant has failed to show that the payments it received from Plaintiff during the preference period were intended as a contemporaneous exchange for new value, § 547(c)(1) does not protect the payments from being avoided by Plaintiff.

2. Ordinary Course of Business under § 547(c)(2)

The second defense raised by Defendant is the ordinary course of business defense, 11 U.S.C. § 547(c)(2). That section states:

> ( c) The Trustee may not avoid under this section a transfer –
> . . .
> (2) to the extent that such transfer was–
>
> (A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;
>
> (B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and
>
> ( C) made according to ordinary business terms.[3]

To prevail on a § 547( c)(2) defense, a creditor must prove that the method of

---

[3] Section 547( c)(2) has been revised by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, effective October 17, 2005. However, § 547( c)(2), as revised, is inapplicable as this case was filed before the effective date of the new Act.

11

payment during the preference period was ordinary as to the relationship between the creditor and the debtor (known as the "subjective" test) and show that the method of payment was one commonly (or ordinarily) accepted in the industry (known as the "objective" test). *See Luper v. Columbia Gas of Ohio, Inc. (In re Carled)*, 91 F.3d 811, 813 (6th Cir. 1996); *Roberds, Inc. V. Broyhill Furniture (In re Roberds, Inc.)*, 315 B.R. 443, 455 (Bankr. S.D. Ohio 2004). In the *Roberds* case, the bankruptcy court explained the Sixth Circuit's view of the term "ordinary":

> In determining what is 'ordinary', the Sixth Circuit has explained that: Whether a payment is made in the ordinary course of business and according to ordinary business terms is a factual determination. . . ' *In re Fulgham Const. Corp.*, 872 F.2d 739, 742 (6th Cir. 1989). The *Fulgham* court determined that section 547( c)(2) was intended to 'protect recurring, customary credit transactions which are incurred and paid in the ordinary course of business of the debtor and the transferee.' *Id*. At 743 (citation omitted). Because there is no readily applicable test of what constitutes an 'ordinary course of business,' this court must engage in a factual analysis of 'the business practices which were unique to the particular parties under consideration. . . ' *Id.*
>
> In considering which transactions are ordinary, courts examine several factors, including timing, the amount and manner a transaction was paid and the circumstances under which the transfer was made. *In re White*, 58 B.R. 266 F(Bankr. E.D. Tenn. 1986).

*Roberds*, 315 B.R. at 455.

With respect to the objective prong of the test, the Sixth Circuit holds that "'ordinary business terms' means that the transaction was not so unusual as to render it an aberration in the relevant industry." *Roberds*, 315 B.R. at 455 (citing *Carled*, 91 F.3d at 818, additional citations omitted). With respect to the subjective prong, § 547 ( c)(2)(B), the Sixth Circuit has explained that the court must engage in a fact-

12

specific analysis of transactions "'including timing. . . amount and manner a transaction was paid and the circumstances under which the transfer was made'. . a late payment will be considered 'ordinary' only upon a showing that late payments were the normal course of business between the parties." *(Logan v. Basic Distribution Corp. (In re Fred Hawes Organization, Inc.)*, 957 F.2d 239, 244 (6th Cir. 1992)(citations omitted). *See also, Roberds*, 315 B.R. at 456-57.

As noted above, Defendant's witness testified that for many years, Defendant received payments within 30 to 45 days after an invoice was sent to Plaintiff. As payments to Defendant slowed, Plaintiff's account was placed on credit hold status, in an attempt to limit Defendant's credit exposure to Plaintiff to $50,000. Thus, when outstanding invoices approached $50,000, Defendant would require a payment on an old invoice prior to shipping new goods. Defendant's Exhibit A shows that the length of time between invoices for the checks paid during the preference period was between 49 and 68 days. In addition, the invoice dated April 29, 2004 states "Balance of March shipment- Chemtool agreed to delay billing." The invoice indicates that the goods were shipped on March 18, 2004. While Mr. Klesmith testified that a delay in invoicing was unusual, the general pattern of payment during the preference period is substantially longer than the 30 to 45 day payment period Mr. Klesmith stated was the time frame for payment in earlier years of the relationship.

The Court finds that the manner in which payments were made during the preference period was not consistent with the parties' pre-preference period payment terms and thus, does not pass muster under the subjective prong of the ordinary course

13

of business test. Plaintiff's account was placed on credit hold in order to more carefully monitor outstanding debt. Defendant effectively lengthened the amount of time in which it allowed Plaintiff to pay the outstanding invoices. Defendant continued to ship goods from April 29, 2004 through May 12, 2004 notwithstanding the fact that the April 29 invoice was not paid until July 8, 2004. This pattern of accepting late payments defeats Defendant's argument that payments were made in the ordinary course of the parties' pre-preference period terms i.e. payment within 30 to 45 days.

Because § 547( c)(2) is conjunctive, the Court need not address the objective prong of the ordinary course defense. The Court notes that Defendant submitted no evidence on this issue. The only testimony offered regarding standard industry payment practices was offered by Mr. Klesmith, who believed that late payment was common in the troubled automobile supplier industry. That testimony, standing alone, is not sufficient to meet Defendant's burden of proof under the objective prong of the ordinary course defense.

## Conclusion

For the foregoing reasons, the Court finds that the payments made by Plaintiff to Defendant between July 8, 2004 and September 9, 2004 were preferential payments under 11 U.S.C. § 547(b). Plaintiff is granted judgment in the amount of $59,370.15. plus interest from the date of the filing of the Complaint.[4]

---

[4] *See Hechinger Investment Co. v. Universal Forest Products, Inc. (In re Hechinger Investment Co.)*, 2007 WL 1630004 (3d Cir. 2007)(awarding prejudgment interest is within bankruptcy court's discretion; award should be denied only where there is "sound reason" to do so) .

14

**Signed on July 26, 2007**

                                                    **/s/ Marci B. McIvor**
                                                    **Marci B. McIvor**
                                                    **United States Bankruptcy Judge**